## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

NATIONAL LOAN ACQUISITIONS COMPANY,

      Plaintiff,

v.                                    No. CIV 16-0220 RB/SCY

JOHN J. HAMILTON, MARGARET M. HAMILTON,
FRED H. HAMILTON, M.D., HAROLD G. FIELD,
LINDA ANN SMITH, M.D., JOHN R. LEWINGER,
MARTI A. PARTRIDGE, MICHAEL E. PARTRIDGE,
ANN F. STULL, JOHN R. RANSOM, JULIA L. RANSOM,
MARY JO GRIFFIN, WILLIAM T. ROBERTSON,
JOSEPH R. ROMERO, and JOHN U. CHEEK,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Opposed Rule 12(b)(1) Motion to Dismiss Complaint for Debt and Money Due and Recovery on Guaranties, or in the Alternative, to Stay All Proceedings in Favor of the December 21, 2015 First-Filed New Mexico State District Court Action for Breach of Implied Duty of Good Faith and Fair Dealing and Other Relief, filed on April 12, 2016 (Doc. 36). Jurisdiction arises under 28 U.S.C. § 1332.

Having considered the submissions of counsel and relevant law, the Court will **GRANT IN PART** Defendants' motion as outlined below.

## I.  Procedural Background and Statement of Facts

This lawsuit arises out of an unpaid commercial loan—and the two sides of the story behind why the debtor let the payments lapse. NLACO, the federal Plaintiff, alleges that the Defendants in this case, all Guarantors for the loan at issue, owe NLACO the remaining amount of the debt based on the guaranties the Guarantors signed. The Guarantors, on the other hand, who were

already plaintiffs in a state court case they filed three months prior to this suit, allege that NLACO and the original lender breached the loan agreement.[1] The Guarantors now ask this Court to dismiss or stay the federal suit in favor of the state suit.

According to the allegations in the federal complaint, NMREA AFC 1, LLC, a New Mexico Limited Liability Company (NMREA) obtained a loan of $6,200,000.00 (the loan) from the First National Bank of Santa Fe (FNBSF) in exchange for a promissory note (the note) in January 2007. (Doc. 1 (Compl.) ¶¶ 20–21; *see also* Doc. 1-1.) NMREA also signed a business loan agreement with respect to the loan and the note in January 2007. (Compl. ¶ 23; *see also* Doc. 1-3.) In March 2007, NMREA signed and delivered a mortgage to FNBSF, which FNBSF recorded in Bernalillo County, New Mexico. (Compl. ¶ 24; *see also* Doc. 1-4.) NMREA and FNBSF executed change in terms agreements in November 2007 and November 2008, increasing the amount of the loan to $6,456,216.00. (Compl. ¶ 22; Doc. 1-2.) The Guarantors each executed a commercial guaranty, guarantying the performance of NMREA under the note and change in terms agreements (the guaranties). (Compl. ¶ 26; Doc. 1-6.)

According to the allegations of the Guarantors and NMREA (the State Court plaintiffs) in the state complaint, NMREA was formed for the purpose of buying, owning, and managing a commercial building in Albuquerque, New Mexico (the building), the property that was subject to the mortgage. (Doc. 36-1 ¶ 8 (Docs. 36-1–36-6 are collectively the State Ct. Compl.).) NMREA leased out office space in the building and asserts that without the proceeds of these leases, NMREA would have been unable to fund payments on the loan, as lease proceeds were the

---

[1] For ease of reading, the Court will refer to the Plaintiff in the federal case as NLACO, and to the Defendants in the federal case as the Guarantors. The Court will refer to the plaintiffs collectively in the state case (NMREA and the Guarantors) as the State Court plaintiffs, and the defendants collectively in the state case (FNBSF and NLACO) as the State Court defendants.

company's sole income. (*Id.* ¶¶ 8, 18.) Colliers of New Mexico (Colliers), a company that leased the entire third floor of the building, was NMREA's primary tenant from 2004 to 2015. (*Id.* ¶¶ 8, 17–18.) The Colliers' lease was due to expire in December 2015, and Colliers began negotiating a new lease (the Colliers Lease) with NMREA in the spring of 2015. (*Id.* ¶ 25.)

Colliers conditioned its proposed five-year renewal[2] on NMREA obtaining a Subordination, Non-Disturbance, and Attornment (SNDA) from FNBSF. (*Id.* ¶¶ 26, 39.) An SNDA is an agreement between the debtor/landlord (NMREA), the debtor's tenant (Colliers), and the lender (FNBSF), and is beneficial—allege the State Court plaintiffs—to both tenant and lender. (*Id.* ¶ 27.) The parties to an SNDA agree that: (1) "the lease is subordinate to the landlord's mortgage, . . . [and] the tenant will not be disturbed if the landlord defaults under the mortgage" (subordination); (2) "as long as the tenant is not in default under the lease, the lease is treated as senior and will not be terminated in a foreclosure" (non-disturbance), Kathryn Cochrane Murphy, Estoppel Certificates & Subordination, Non-Disturbance & Attornment Agreements, 19 No. 6 Prac. Real Est. Law. 23, at 25–26 (Nov. 2003); and (3) the tenant will recognize and pay rent to the lender or new owner (attornment). (State Ct. Compl. ¶ 27.)

The State Court plaintiffs allege that an SNDA is a customary and standard document signed by parties to commercial leases, especially where the tenant is agreeing to execute a long-term lease and has committed to making improvements to the leased space. (*Id.* ¶ 28.) The State Court plaintiffs also maintain that FNBSF (and later NLACO) knew the significance of the Colliers Lease, as the Colliers payment alone equaled nearly half of NMREA's regular payment. (*Id.* ¶ 18.) The allegations in the state court complaint reveal that representatives from NMREA met and

---

[2] The new five-year lease term was set to begin on September 1, 2015, pending issuance of the SNDA from FNBSF. (State Ct. Compl. ¶ 39.)

communicated with representatives from FNBSF several times from April 2015 through August 2015, and the FNBSF representatives' statements and representations led NMREA to believe that the SNDA would be approved.[3] (*Id.* ¶¶ 30–32, 35–37, 41–43.) As late as August 29, 2015, an NMREA representative asked FNBSF's Vice President of Special Assets if FNBSF planned to sell the loan; the Vice President replied "that though there 'may' have been some inquiries about the Loan, the Bank did not know of any proposed sale." (*Id.* ¶¶ 36, 44.) On September 2, 2015, FNBSF transferred the note and the guaranties (among other documents) to NLACO.[4] (Compl. ¶ 27; Docs. 1-1 at 3; 1-9.) An NMREA representative called FNBSF that same afternoon, and the FNBSF Vice President admitted that the bank had sold the loan to NLACO. (State Ct. Compl. ¶ 45.) Consequently, NLACO is now entitled to enforce all of the loan documents, including the guaranties. (Compl. ¶ 28.)

The State Court plaintiffs allege that NLACO became aware of how important the Colliers Lease was, the impending five-year lease renewal, and the condition that NLACO issue an SNDA. (State Ct. Compl. ¶¶ 29, 51–53, 55–58.) Despite NMREA informing NLACO about its need for the SNDA, plans for the building, and inability to pay the loan without the Colliers Lease, the State Court plaintiffs assert that NLACO's representative told NMREA "That's your problem[,]" and refused to execute the SNDA. (*Id.* ¶¶ 51–58.) The State Court plaintiffs allege that NLACO disapproved of NMREA's plans for the building and told NMREA it should instead consider marketing the space for medical use. (*Id.* ¶ 59.)

---

[3] NLACO has not yet filed an answer in the state court lawsuit; it is unclear, therefore, to what extent NLACO disputes the allegations in the state court complaint. (*See* Doc. 36 at 3.)
[4] Confusingly, NLACO's federal complaint gives the date it received the loan as April 5, 2013. (Compl. ¶ 27.) The Court can only infer this was a typographical error, as the Allonge referenced in paragraph 27 is dated September 2, 2015. (Doc. 1-1 at 3.)

The State Court plaintiffs assert that the State Court defendants' knowing and intentional actions impaired the plaintiffs' ability to pay the loan. (*Id.* ¶¶ 71–74.) They also allege that they were current on their loan payments through January 8, 2016—presumably through the end of the previous Colliers lease. (*Id.* ¶¶ 25, 75.) The State Court plaintiffs filed their complaint in the Second Judicial District Court in Bernalillo County on December 21, 2015, alleging the following counts against NLACO: (II) NMREA's Claim Breach of the Implied Duty of Good Faith and Fair Dealing (*id.* ¶¶ 84–92); (III) NMREA's Claim for Tortious Interference with Contractual Relations (*id.* ¶¶ 93–102); (V) NMREA's Claim for Prima Facie Tort (*id.* ¶¶ 112–15); (VIII) NMREA's Claim for Breach of Fiduciary Duty (*id.* ¶¶ 135–43); (IX) NMREA's Claim for Negligence (*id.* ¶¶ 143–44); (XI) Liability to Purported Guarantors for Breach of the Implied Duty of Good Faith and Fair Dealing and Duty to Act in a Commercially Reasonable Manner (*id.* ¶¶ 153–58); (XII) Liability to Purported Gurantors for Promissory Estoppel, Equitable Estoppel and Detrimental Reliance (*id.* ¶¶ 159–65); (XIII) Liability to Purported Guarantors for Prima Facie Tort (*id.* ¶¶ 166–70); and (XVI) Purported Guarantors' Request for Declaratory Judgment (*id.* ¶¶ 188–95). At the time the State Court plaintiffs filed suit, only two monthly payments, due in January and February 2016, remained on the loan. (Doc. 41 at 4.) They also owed the final payment of $4,852,000, which was due on March 9, 2016.[5] (*Id.*) NLACO has disclosed that it is in the process of selling the building that serves as collateral for the loan; the closing is scheduled for June 2016. (Doc. 41 at 6 n.3.)

NLACO has not yet filed an answer in the state action; instead, it filed a motion to dismiss the Guarantors' state complaint on January 27, 2016, on the basis that the complaint fails to state

---

[5] The amount in controversy exceeds $75,000. (Compl. ¶ 19.)

a claim on which relief can be granted.[6] (*See* Doc. 41-A at 1.) Specifically, NLACO argues that (1) NLACO's withholding of consent to the Colliers Lease is not actionable; (2) the loan documents themselves prohibit unwritten extra-contractual conditions; (3) there are insufficient factual allegations to state any claims against NLACO; and (4) the claims are barred by the statute of frauds. (*Id.* at 3–6.)

NLACO, an Oregon corporation with its principal place of business in Oregon, filed its federal Complaint for Debt and Money Due and Recovery on Guaranties on March 23, 2016. (Compl. ¶ 2.) All but one of the Guarantors reside in New Mexico; the remaining Guarantor resides in Tennessee, making diversity jurisdiction appropriate under 28 U.S.C. § 1332. (*Id.* ¶¶ 3–18.) The Guarantors correctly assert that the State Court plaintiffs could not have brought their claims in federal court, nor could NLACO have removed the state case to federal court, as FNBSF—a bank chartered in New Mexico—would have destroyed diversity jurisdiction. (State Ct. Compl. ¶¶ 1–2; *see also* Doc. 36 at 4.) Neither party presents any basis for federal question jurisdiction. (*See* Compl.; *see also* Doc. 41 at 16.) The Guarantors, who have moved to dismiss pursuant to the *Colorado River* abstention doctrine, assert that NLACO's federal claims are all compulsory counterclaims in the state case. (Doc. 36 at 1 n.1, 6.)

## II.    Legal Standard

The Guarantors bring their motion pursuant to Rule 12(b)(1), seeking dismissal of the federal lawsuit due to lack of subject matter jurisdiction on the grounds that the *Colorado River* abstention doctrine applies. (*See* Doc. 36 at 1 n.2 (citing Fed. R. Civ. P. 12(b)(1)).) Alternatively, the Guarantors ask the Court to stay the matter pending the outcome of NLACO's motion to dismiss in state court. (*Id.* at 2.) The *Colorado River* abstention doctrine allows "a federal court . .

---

[6] NLACO has also filed a second motion in the state action to dismiss NMREA's state complaint. (Doc. 41 at 5.)

. [to] stay or dismiss a federal suit pending resolution of a parallel state court proceeding." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 848 F. Supp. 2d 1309, 1318 (D.N.M. 2012) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Staying or dismissing the federal case to avoid duplicating a state case serves several purposes, including: 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Potter/Ortiz, LLC v. Lone Mountain Ranch, LLC*, No. CIV 13-1043 RB/LAM Doc. 35 at *3 (D.N.M. July 29, 2014) (quoting *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (internal citations omitted)).

"Because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' the *Colorado River* doctrine may be used only when 'the clearest of justifications . . . warrant[s] dismissal.'" *THI of N.M. at Vida Encantada, LLC*, 848 F. Supp. 2d at 1318 (quoting *Colo. River*, 424 U.S. at 818–19 (internal citations omitted)). "Declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in 'exceptional' circumstances." *Id.* (citing *Colo. River*, 424 U.S. at 818). "Accordingly, this Court's 'task . . . is not to find some substantial reason for the exercise of federal jurisdiction by the federal court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the surrender of the jurisdiction.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983)).

Courts engage in a two-step analysis to determine whether the circumstances of a case are "exceptional." To begin, the Court "must determine whether the state and federal proceedings at issue are indeed parallel." *Id.* (citing *Fox*, 16 F.3d at 1081). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quoting *Fox*, 16 F.3d at 1081 (internal citation omitted)). If the proceedings are parallel, the Court will then consider the

nonexclusive list of factors delineated in *Colorado River* and its progeny "in deciding whether 'exceptional circumstances' exist to warrant such deference . . . ." *Id.* at 1318–19 (quoting *Fox*, 16 F.3d at 1082). The factors include: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; . . . (4) the order in which the courts obtained jurisdiction"; (5) "whether federal law provides the rule of decision"; (6) "the adequacy of the state court action to protect the federal plaintiff's rights"; (7) "whether the party opposing abstention has engaged in impermissible forum-shopping[,]" *id.* at 1319 (quoting *Fox*, 16 F.3d at 1082 (internal citations omitted)); and (8) "the vexatious or reactive nature of either action." *Potter/Ortiz, LLC*, No. CIV 13-1043 at *6 (citing *Moses H. Cone*, 460 U.S. at 18 n.20).

"The Supreme Court has counseled that no single factor is dispositive, but rather, '[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.'" *THI of N.M. at Vida Encantada, LLC*, 848 F. Supp. 2d at 1319 (quoting *Moses H. Cone*, 460 U.S. at 16). Courts are not to treat "the factors as a 'mechanical checklist,' and instead must engage in 'a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). "[T]he Court must resolve any doubt 'in favor of exercising federal jurisdiction.'" *Id.* (quoting *Fox*, 16 F.3d at 1082 (internal citation omitted)).

## III.   Discussion

### A.   Whether the Two Actions Are Parallel

Lawsuits "are parallel if substantially the same parties litigate substantially the same issues in different forums." *THI of N.M. at Vida Encantada, LLC*, 848 F. Supp. 2d at 1318 (quoting *Fox*, 16 F.3d at 1081). Here, the parties are ultimately asking both the state and federal courts to decide

who is responsible for the remainder of NMREA's loan; they simply couch their requests in different terms. (*See* Compl.; State Ct. Compl.) In the state suit, the State Court plaintiffs allege that the State Court defendants intentionally acted in a way that interfered with the plaintiffs' relationship with Colliers and caused damages to the plaintiffs' ability to pay its loan. (*See* State Ct. Compl.) In the federal suit, NLACO alleges that the Guarantors have defaulted on their obligations to pay the remaining amount due on the loan. (*See* Compl.)

NLACO argues the issues are different for two primary reasons: (1) because the federal suit is missing two parties to the state suit, the issues cannot be and are not the same; and (2) there are currently no claims or counterclaims pending in the state suit regarding the guaranties. (Doc. 41 at 8–12.) It is true that two of the parties to the state suit are not included in the federal suit. But "[i]n determining whether actions are parallel, 'exact identity of parties and issues is not required[,]'" *Potter/Ortiz, LLC*, No. CIV 13-1043 at *4 (quoting *United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002)), "and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (citations omitted).

The Seventh Circuit has described parallel cases in this way: "[t]he question is not whether the suits are formally symmetrical, but whether there is a 'substantial likelihood' that the [state] litigation 'will dispose of all claims presented in the federal case.'" *Id.* (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (internal citation omitted)); *see also*, *Moses H. Cone*, 460 U.S. at 28 (finding that suits are parallel if the "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties."). This test, explained the Seventh Circuit, "requires a district court judge to make a determination as to what issues will be resolved based on the status of the state litigation at the time the stay is requested." *Day*, 862 F.3d

at 656. In *Day*, "a group of former shareholders" brought suit in federal court "against the purchasers of their stock . . . ." *AAR Int'l, Inc.*, 250 F.3d at 520 (citing *Day*, 862 F.2d at 654). "[T]he federal action turned on the interpretation of the payment provision of the stock purchase agreement[,] which was the subject of the state litigation[,]" even though the payment provision "was not specifically raised in the state court proceeding." *Id.* (citing *Day*, 862 F.2d at 656–57). "In the state action, the purchasers of the stock had claimed that the shareholders breached certain representations and warranties, thereby relieving the purchasers of their obligations under the stock purchase agreement." *Id.* "The state action therefore addressed the validity, enforceability, and interpretation of the entire stock purchase agreement, of which the payment provision was a part." *Id.* The court found "that the issue presented in the federal claim" about the payment provision "would be disposed of in the state litigation, regardless of which party prevailed in the state case. *Id.* at 521 (citing *Day*, 862 F.2d at 656). Additionally, the court concluded "that the issue presented in the federal action was premature, since it could not be resolved until the issue presented in the state action (the validity of the stock purchase agreement) was decided." *Id.*

The facts presented in the parties' state and federal suits here are relatively analogous. NMREA and the Guarantors brought suit in state court, arguing that FNBSF and NLACO's actions breached their contract. While the Court can find no claims expressly arising from a breach of the guaranties themselves, part of the relief the State Court plaintiffs request is "[r]ecission and cancellation of all Guaranties." (State Ct. Compl. at 46 ¶ 5.) Surely NLACO's counterclaim, if the motion to dismiss is denied, will allege that NLACO is entitled to recover on the guaranties. It appears, therefore, that "the state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Moses H. Cone*, 460 U.S. at 28.

While it appears at first glance that the Seventh Circuit's test—to determine "what issues *will be* resolved[,]" *Day*, 862 F.3d at 656—does not jive with the Tenth Circuit's admonition to "examine the state proceedings *as they actually exist*" *Fox*, 16 F.3d at 1081 (citations omitted), the Tenth Circuit in *Fox* also defined parallel proceedings as those in which "the federal court will have nothing further to do in resolving any substantive part of the case . . . ." *Fox*, 16 F.3d at 1082 (quoting *Moses H. Cone*, 460 U.S. at 28 (internal citation omitted)). To determine whether the federal court will have anything "further to do" requires the district court to employ some logic and foresight beyond looking at the "proceedings as they actually exist." *Id.*

"This case is literally a text-book example of parallel proceedings." *THI of N.M. at Vida Encantada, LLC v. Archuleta*, No. CIV. 11-0399 BB/ACT, 2012 WL 8169886, at *4 (D.N.M. Jan. 12, 2012) ("[A] common form of [parallel or] duplicative litigation is the reactive lawsuit. Reactive litigation occurs when a state defendant reciprocally files a federal suit concerning the same subject. The state defendant may file a reactive federal suit for several reasons, including perceptions of bias or sympathy, strategic or tactical advantages, or docket congestion.") (quoting 17 James Wm. Moore et al., *Moore's Fed. Practice* § 122.06)); *see also* 17A James Wm. Moore et al., Moore's Fed. Practice – Civil § 122.90 (2016 3d ed.). The Court finds NLACO's arguments unavailing regarding the additional issues and parties in the state case. There is sufficient evidence to find that "substantially the same parties" are litigating "substantially the same issues." *Fox*, 16 F.3d at 1081. The state and federal cases are parallel.

## B.    Colorado River Factors

The Court will next examine each of the factors outlined in *Colorado River* and subsequent cases in order to decide whether "exceptional circumstances" exist to warrant a stay or dismissal of the federal case.

### 1.    Whether either court has assumed jurisdiction over property.

The parties agree that neither court has assumed jurisdiction over the property. (Docs. 36 at 12; 41 at 13.) There is no foreclosure action pending in either court. (Doc. 41 at 13.) NLACO asserts that the building that secures the loan is under a fully executed purchase contract and will be sold in June 2016. (*Id.*) NLACO concedes, though, that if for some reason it would need to foreclose the mortgage, the action would lie against NMREA (not the Guarantors) and could only be filed in state court. (*Id.* at 12 n.8.) In that case, the state court would have jurisdiction over the property. Overall, this factor is neutral at this time.

### 2.    The inconvenience of the federal forum.

The parties agree that the federal forum is not inconvenient. This factor is neutral.

### 3.    The desirability of avoiding piecemeal litigation.

The Guarantors contend that the third factor strongly supports declining jurisdiction in favor of the state proceeding. The Court agrees this factor provides the strongest justification for deference to the state court proceedings. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).

NLACO urges the Court to consider the status of the state case as it is now—with no answer filed. But if the state court denies NLACO's motion to dismiss, it appears NLACO's counterclaims will be similar or identical to its claims in this case. Similarly, if this case moves forward, the Guarantors' counterclaims may mirror some of the claims in the state case. In fact, NLACO admits that the Guarantors can bring the state claims as defenses or counterclaims in the federal case. (Doc. 41 at 15.) Moreover, the Guarantors point out that NLACO and FNBSF may share common arguments and issues. (*See* Doc. 36 at 13 ("the lenders seem to have much in common in terms of

excuses for their conduct").) Consequently, both courts will then be examining the same issues, "thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Philippines), Inc.*, 843 F.2d at 1258. This factor strongly supports the Guarantors' position.

### 4.     The order in which the courts obtained jurisdiction.

The Guarantors filed in state court in December 2015, approximately three months before NLACO filed in federal court. NLACO filed motions to dismiss both the Guarantors' and NMREA's claims on January 27, 2016. FNBSF filed a partial motion to dismiss on January 28, 2016. All three of those motions have been fully briefed since March 25, 2016. The parties have engaged in some discovery, but NLACO has moved for a stay of further discovery pending a decision on its motions to dismiss. The state court has not entered a scheduling order.

Judge Yarbrough entered the Initial Scheduling Order in the federal case on April 6, 2016, and scheduled the Rule 16 Initial Scheduling Conference for June 14, 2016. (Docs. 22, 38.) The Guarantors filed this motion to dismiss on April 12, 2016. (Doc. 36.) NLACO served its initial disclosures on June 3, 2016. (Doc. 46.) The parties filed the Joint Status Report and Provisional Discovery Plan on June 6, 2016. (Doc. 47.)

The procedural postures of the two cases are similar, and this factor leans in favor of deference to the state proceedings.

### 5.     Whether federal law provides the rule of decision.

NLACO acknowledges that state law will apply to all issues between it and the Guarantors. (Doc. 41 at 16.) Both courts are equally capable of applying New Mexico state law to the claims. This factor falls on the side of deference to the state proceedings.

### 6.    The adequacy of the state court action to protect the federal plaintiff's rights.

NLACO argues that because it has not yet asserted any counterclaims against the Guarantors in the state case, this Court cannot have full confidence in the state court's ability to dispose of the dispute between the parties. (*Id.* at 17.) The Court finds this argument somewhat disingenuous: NLACO does not contend that it will be *unable* to assert its counterclaims if the state court denies its motion to dismiss. (*See id.*) Moreover, because the state court has the benefit of having all relevant parties and claims before it—parties and claims that cannot come before this Court because FNBSF would destroy diversity—the state court litigation will be a much better "vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. The Court finds this factor leans heavily in favor of deference to the state court.

### 7.    Whether the party opposing abstention has engaged in impermissible forum-shopping.

Both parties accuse the other of impermissible forum-shopping: the Guarantors accuse NLACO of forum-shopping because it filed a federal lawsuit instead of filing an answer in the state lawsuit with its compulsory counterclaims (Doc. 36 at 17); NLACO accuses the Guarantors of forum-shopping because it believes their claims against it are "trumped up" and not viable (Doc. 41 at 18). The Court disagrees with NLACO's categorization of the state law claims. If anything, it made sense for the Guarantors to bring all of the related claims and relevant parties together in one lawsuit. They could not have filed in federal court because FNBSF destroyed diversity jurisdiction. The Guarantors' only choice was to file in state court.

While it is clear NLACO would prefer to litigate this issue in federal court, the fact that NLACO filed here does not prove that it has engaged in impermissible forum-shopping. *See Potter/Ortiz, LLC*, No. CIV 13-1043 at *9. "[T]his factor only weighs in favor of a stay when the

party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Int'l Asset Mgmt., Inc. v. Holt*, 487 F. Supp. 2d 1274, 1286 (N.D. Okla. 2007) (quotation omitted). There have been no adverse rulings in the state court action—yet. The fact that NLACO filed its complaint here rather than filing counterclaims in state court could be construed, however, as seeking to avoid an adverse ruling. Overall, the Court finds this factor to weigh in favor of deferring to the state court.

### 8.    The vexatious or reactive nature of either action.

NLACO has offered no compelling reason for filing its claims in federal court instead of filing them as counterclaims in state court. "Viewed through a cynic's lens, [NLACO's] actions could be a retributive attempt to force [the Guarantors] to expend resources defending two identical suits." *Potter/Ortiz, LLC*, No. CIV 13-1043 at *9. This factor supports the Guarantors' position.

### C.    Balancing the Factors

In balancing the *Colorado River* factors, "[n]o one factor is necessarily determinative[,]" *Colo. River*, 424 U.S. at 818, and "[t]he weight to be given any one factor may vary from case to case . . . ." *Moses H. Cone*, 460 U.S. at 16. Not only should courts favor "the exercise of jurisdiction[,]" but "any doubt in the application and balancing of the factors 'should be resolved in favor of exercising jurisdiction." *Potter/Ortiz, LLC*, No. CIV 13-1043 at *10 (quoting *Fox*, 16 F.3d at 1082). "Only the clearest of justifications will warrant dismissal." *Colo. River*, 424 U.S. at 819. The Tenth Circuit has counseled that rather than dismissing the federal proceedings altogether, "the better practice is to stay the federal action pending the outcome of the state proceedings." *Fox*, 16 F.3d at 1083 (citations omitted).

The bulk of the factors here favor deference to the state court. The first two factors (jurisdiction over property and inconvenience of federal forum) are neutral. The fourth, fifth,

seventh, and eighth factors (order in which the courts obtained jurisdiction, whether federal law provides the rule of decision, impermissible forum-shopping, vexatious or reactive nature of either action) weigh in favor of deferring to the state court. The third and sixth factors (desirability of avoiding piecemeal litigation and adequacy of the state court action to protect the federal plaintiff's rights) weigh much more heavily in favor of deferring to the state court.

As in *Day*, the ultimate issue in this case revolves around the actions of NLACO and FNBSF with respect to the Colliers Lease, the building, the loan, and the enforceability of the loan documents. *See Day*, 862 F.2d at 656 (holding that "[w]here the validity, enforceability and interpretation of a contract are at issue in both federal and state courts, and the state litigation was commenced first and has progressed substantially towards completion, entry of a stay does not under *Colorado River* constitute an abuse of discretion."). The state court has the benefit of having all relevant parties and issues before it. The state court may make rulings concerning the rights of the parties as to NMREA that may affect the rights of the Guarantors and NLACO. This factor alone constitutes a strong reason to defer to the state proceedings.

After carefully weighing each factor, the Court finds that exceptional circumstances exist that warrant deference to the state court proceedings. Because the Tenth Circuit favors a "stay [of] the federal action pending the outcome of the state proceedings[,]" *Fox*, 16 F.3d at 1083 (citations omitted), the Court will stay the federal suit rather than dismissing it outright. "Should the state-court proceedings fail to resolve all federal claims, a stay allows [NLACO] the opportunity to litigate the remaining claims in federal court without requiring plaintiffs to file a new federal action." *Foxfield Villa Assocs., LLC v. Regnier*, 918 F. Supp. 2d 1192, 1205 (D. Kan. 2013) (citing *Fox*, 16 F.3d at 1083).

The Court has no doubt that allowing the state court to sort out the entirety of the issues between all relevant parties is a better course than splitting the issues up between forums. There is no sense in doubling up on judicial resources, not to mention the time and energy of the attorneys and litigants.

## V.    Conclusion

The Court finds that after balancing the *Colorado River* factors, a stay is warranted while the state court proceedings continue. If the state court does not dispose of all claims between NLACO and the Guarantors, either party may petition the Court to lift the stay.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Opposed Rule 12(b)(1) Motion to Dismiss Complaint for Debt and Money Due and Recovery on Guaranties, or in the Alternative, to Stay All Proceedings in Favor of the December 21, 2015 First-Filed New Mexico State District Court Action for Breach of Implied Duty of Good Faith and Fair Dealing and Other Relief, filed on April 12, 2016 (Doc. 36) is **GRANTED IN PART**;

**IT IS FURTHER ORDERED** that further proceedings in this case are **STAYED** pending decisions in the state court as described *supra*.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**